# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-4373

_____

United States of America,       *
      *
      Plaintiff - Appellee,       *
      *    Appeal from the United States
      v.       *    District Court for the District of
      *    Nebraska.
Wesley W. Pappas, also known as       *
Wesley Pantona,       *
      *
      Defendant - Appellant.       *

_____

Submitted: April 20, 2006
Filed: June 26, 2006

_____

Before MURPHY, MELLOY, and GRUENDER, Circuit Judges.

_____

MELLOY, Circuit Judge.

Wesley Pappas appeals the judgment and sentence of the district court[1] following Pappas's conditional guilty plea to being a felon in possession of a firearm. Pappas has three arguments on appeal. First, Pappas contends that the police lacked probable cause and reasonable suspicion for the traffic stop that led to his arrest. Second, Pappas argues that the search of his vehicle was improper, and all evidence seized because of that search should have been suppressed. Third, Pappas appeals his

---

[1] The Honorable Joseph F. Bataillon, Chief Judge, United States District Court for the District of Nebraska.

sentence as unreasonable based upon the sentencing goals outlined in 18 § U.S.C. 3553(a). We affirm.

## I.

On January 3, 2005, Pappas was driving his pickup truck through Omaha, Nebraska. Officer Adele Tomsu spotted the truck when it was running, but not moving. Tomsu had seen Pappas and his truck before. In November 2004, Tomsu arrested Pappas for driving his pickup truck with a suspended license. During the arrest, Pappas resisted and injured Tomsu such that she was unable to work for six weeks. Tomsu also believed that Pappas was a convicted felon and had an anonymous tip that Pappas was carrying a firearm. Based upon that history and information, Tomsu believed that the pickup truck she saw on January 3 belonged to Pappas, and she suspected that he was again driving without a license.

While waiting for the vehicle to move, Tomsu ran a computer check and found that Tomsu's license remained suspended. Tomsu observed the pickup truck as it started moving. Tomsu and another police car followed the pickup truck. Pappas apparently spotted the two police cars even though they did not turn on their sirens or flashing lights because Pappas abruptly stopped his truck. Tomsu approached the truck and ordered Pappas to get out of the vehicle. Pappas got out of his truck and Tomsu put Pappas in handcuffs.

Another officer at the scene, Eric Nordby, searched Pappas. In Pappas's front pants pocket, Nordby found a live round from a .38 caliber handgun. At this time, the officers had not issued Miranda warnings to Pappas. Nordby asked Pappas if he had a gun. Pappas denied being in possession of a gun and said he had found the bullet in the street.

Nordby and Tomsu escorted Pappas to the police station. Nordby began a search of Pappas's truck at the scene of the arrest. At trial, Nordby said he was searching the vehicle as part of an inventory search prior to impoundment. Nordby further claimed that he had produced an inventory of property form but that it was destroyed before the trial. Consequently, there is no inventory form in the record. Nordby's search of the car included a search of the engine compartment. In the recess by the radiator near the driver's side headlight, Nordby saw a .38 caliber semiautomatic pistol. Nordby also found a small pouch of methamphetamine in the visor of the driver's side of the vehicle. The vehicle was never actually impounded because Pappas's mother claimed the truck before a tow truck arrived.

In February 2005, the government indicted Pappas for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Pappas filed a motion to suppress the evidence obtained as a result of the police stop. The magistrate judge recommended that statements made by Pappas to the police be suppressed because Pappas had not received <u>Miranda</u> warnings. However, the magistrate judge recommended that all other suppression arguments by Pappas be denied. Specifically, the magistrate judge found that although the police lacked probable cause and reasonable suspicion to search the vehicle under the automobile exception of the Fourth Amendment, the search of the truck was proper as part of an inventory search. The district court adopted the recommendation of the magistrate judge in its entirety.

On August 30, 2005, Pappas entered a conditional guilty plea reserving his right to appeal the suppression motion. In the plea agreement, the government agreed to recommend the maximum three-level reduction under U.S.S.G. § 3E1.1 for acceptance of responsibility and a sentence at the low end of the applicable Guidelines range absent any downward departures.

Subsequent to the plea hearing, a Presentence Investigation Report (PSR) was prepared. The PSR called for a base offense level of 24 because Pappas had two prior convictions for crimes of violence. The PSR also recommended a three-level reduction for acceptance of responsibility. The PSR put Pappas's total offense level at 21. Based upon Pappas's criminal history category VI, the advisory sentencing range in the PSR was 77 to 96 months imprisonment.

Pappas argued that his prior convictions for burglary of a building, car theft, and attempted escape were not crimes of violence. Further, Pappas asked the court to sentence him below the Guidelines range to mitigate the overstatement of Pappas's criminal history. Pappas argued that because his family and work situation had stabilized, the district court should sentence him to four years imprisonment utilizing the factors outlined in 18 U.S.C. § 3553(a).

The district court rejected Pappas's sentencing arguments. On November 30, 2005, the district court imposed a low-end Guidelines sentence of 77 months imprisonment. Pappas appeals his sentence and conviction.

II.

Pappas argues that the police lacked reasonable suspicion that Pappas was committing criminal activity or probable cause to believe that Pappas had committed a traffic violation. Therefore, Pappas argues that the district court erred by denying his motion to suppress all evidence stemming from that traffic stop. "In reviewing a denial of a motion to suppress, we review the district court's factual findings for clear error and questions of law de novo. . . ." United States v. Mallari, 334 F.3d 765, 766 (8th Cir. 2003).

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures

. . . ." U.S. Const. amend. IV. A traffic stop constitutes a seizure for Fourth Amendment purposes. Whren v. United States, 517 U.S. 806, 809-10 (1996). To be reasonable, a traffic stop must be supported by, at a minimum, "a reasonable, articulable suspicion that criminal activity" is occurring. United States v. Jones, 269 F.3d 919, 924 (8th Cir. 2001). A traffic violation provides probable cause to the police to meet the constitutional reasonableness requirement. United States v. Ehrmann, 421 F.3d 774, 780 (8th Cir. 2005).

We do not find error in the district court's finding that the police had probable cause for the initial stop and search of Pappas's person. The police saw someone they identified as Pappas driving Pappas's truck. Based upon her history with Pappas and the subsequent computer check, Tomsu had reason to believe Pappas was driving with a suspended license. "If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his [or her] presence, he [or she] may, without violating the Fourth Amendment, arrest the offender." Atwater v. City of Lago Vista, 532 U.S. 318, 354 (2001). A valid traffic stop cannot be challenged, as Pappas alleges here, on the basis that the stop was actually a pretext for an investigation of another crime. See United States v. $404,905.00 in U. S. Currency, 182 F.3d 643, 646 (8th Cir. 1999).

Consequently, we find no error in the judgment of the district court that the police engaged in a lawful traffic stop of Pappas. Further, the search of Pappas's person was a lawful search incident to his arrest.

III.

Pappas also argues that the search of his engine compartment was a constitutionally unreasonable search. We apply the same standard of review for this argument as we did in reviewing the initial traffic stop.

An inventory search by police prior to the impoundment of a vehicle is generally a constitutionally reasonable search. See United States v. Alvarez-Gonzalez, 319 F.3d 1070 (8th Cir. 2003). "The police are not precluded from conducting inventory searches when they lawfully impound the vehicle of an individual that they also happen to suspect is involved in illegal activity." United States v. Marshall, 986 F.2d 1171, 1175-76 (8th Cir. 1993). In this case, Pappas argues that the search was not done according to proper police procedure and the search of the engine compartment was not reasonable. We disagree.

The search in this case was not in violation of relevant state law or proper police procedure. An inventory search in Nebraska is lawful if "pursuant to standardized criteria or established routine such as those requiring the removal of a vehicle which is illegally parked, on a public roadway blocking traffic, or defective, or due to the unavailability of an eligible driver." State v. Konfrst, 546 N.W.2d 67, 76 (Neb. Ct. App. 1996). Pappas argues that the lack of any inventory search form makes the search in the present case not subject to the standard procedures required by Nebraska law. However, we do not find clear error in the district court's handling of this factual question. The police officers in this case said that they prepared the proper form and conducted the inventory search according to proper procedure. Pappas's allegation of misconduct on the part of the police is only speculation. As a result, we find that the district court's judgment about the decision to initiate the inventory search was not in error.

Pappas further argues that the search of the engine compartment was not part of a reasonable inventory search. However, we have previously rejected this argument. See United States v. Lewis, 3 F.3d 252, 254 (8th Cir. 1993). Other circuits have also found that the engine compartment is a proper area for an inventory search. See e.g., United States v. Lumpkin, 159 F.3d 983, 987-88 (6th Cir. 1998) (holding that "a valid inventory search conducted by law enforcement officers according to standard procedure may include the engine compartment of a vehicle.").

-6-

Pappas attempts to distinguish the holding in <u>Lewis</u> from the present case. Specifically, Pappas argues that in <u>Lewis</u> the officers had a specific reason to search the engine compartment that does not exist in this case. In <u>Lewis</u>, the police found a bag of cocaine in the defendant's shirt pocket. Consequently, "the officers had ample justification to search all areas of the van where personal property might be found, to protect the public from persons who might find contraband drugs in the van." <u>Lewis</u>, 3 F.3d at 254. Pappas argues that the police had no such justification to suspect that there was contraband in the engine compartment of his truck.

However, we think the facts of <u>Lewis</u> are directly analogous to the present matter. Instead of a bag of cocaine found in a shirt pocket, we have a bullet found in Pappas's pants pocket. The rationale for the inventory search in <u>Lewis</u> applies just as strongly here. Because the police found the bullet, they had every reason to search any part of the vehicle which might contain a gun. In this case, Tomsu also had a tip that Pappas might be carrying a firearm. A search of the engine compartment is certainly justified in such circumstances.

Therefore, we find no error with the district court's judgment that the inventory search, including the search of the engine compartment, was a reasonable search under the Fourth Amendment.

## IV.

Pappas also appeals his sentence arguing that it was unreasonable under the factors outlined in 18 U.S.C. § 3553(a). We review arguments about the reasonableness of a sentence for abuse of discretion. <u>United States v. Haack</u>, 403 F.3d 997, 1003 (8th Cir. 2005).

Pappas had a long criminal history before the commission of the crime in this case. He had accumulated 17 criminal history points. Pappas's prior crimes included

reckless endangerment, discharging a firearm, failure to obey, driving under suspension, loitering and prowling, 1st degree assault, 2nd degree assault, 2nd degree assault in the heat of passion, 3rd degree assault, disorderly conduct, 2nd degree burglary of a building, damage to property under $100, failure to appear, providing false information, vehicular eluding, theft by receiving, grand theft, attempted escape, 2nd degree aggravated motor vehicle theft, and a separate possession of a firearm by a felon. Pappas also admits to long term drug use and has had limited employment throughout his adult life.

However, Pappas told the district court that he had improved his life and had made real progress in stabilizing his situation. The district court acknowledged that Pappas was headed in a better direction and sentenced Pappas at the low end of the applicable Guidelines range.

Under 18 U.S.C. § 3553(a), a sentencing court "shall impose a sentence sufficient, but not greater than necessary" to comply with sentencing goals, considering the nature and seriousness of the offense, the history and characteristics of the defendant, and the need for the sentence to provide justice, deterrence, and other goals of punishment. We will reverse the sentence of a district court if the district court "fails to consider a relevant factor that should have received significant weight, gives significant weight to an improper or irrelevant factor, or considers only appropriate factors but nevertheless commits a clear error of judgment by arriving at a sentence that lies outside the limited range of choice dictated by the facts of the case." Haack, 403 F.3d at 1004. "[A] properly calculated guidelines sentence is presumptively reasonable." United States v. Sebastian, 436 F.3d 913, 915 (8th Cir. 2006).

Reviewing the sentence issued by the district court, we find nothing to indicate that Pappas's sentence was unreasonable. The district court properly applied the

relevant factors under 18 U.S.C. § 3553(a) and properly computed a Guidelines sentence. Accordingly, we affirm the sentence of the district court.

## V.

For the foregoing reasons, we affirm the judgment of the district court.

_____