# United States Court of Appeals
## For the Eighth Circuit

_____

No. 16-2199

_____

United States of America

*Plaintiff - Appellee*

v.

Richard Lee English

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Minnesota - St. Paul

_____

Submitted: November 18, 2016
Filed: January 10, 2017
[Unpublished]

_____

Before BENTON and SHEPHERD, Circuit Judges, and EBINGER,[1] District Judge.

_____

PER CURIAM.

_____

[1]The Honorable Rebecca Goodgame Ebinger, United States District Judge for the Southern District of Iowa, sitting by designation.

Richard Lee English appeals his conviction following a jury trial of conspiracy to distribute heroin, in violation of 21 U.S.C. §§ 846 and 841(a)(1), and possession of heroin with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). The district court[2] sentenced English to 150 months imprisonment. On appeal, English asserts that the evidence is insufficient to support his convictions and the district court erred in denying his motion for acquittal. We affirm.

"We review de novo the sufficiency of the evidence to sustain a conviction, viewing the evidence in a light most favorable to the verdict and accepting all reasonable inferences supporting the verdict." United States v. Colton, 742 F.3d 345, 348 (8th Cir. 2014) (per curiam) (citing United States v. Cuevas-Arrendondo, 469 F.3d 712, 715 (8th Cir. 2006)). "When reviewing the sufficiency of the evidence to support a conspiracy conviction, we will affirm if the record, viewed most favorably to the government, contains substantial evidence supporting the jury's verdict, which means evidence sufficient to prove the elements of the crime beyond a reasonable doubt." United States v. Lopez, 443 F.3d 1026, 1030 (8th Cir. 2006) (en banc) (citing United States v. Crenshaw, 359 F.3d 977, 987 (8th Cir. 2004)).

In order to convict English of conspiracy to distribute heroin, the government was required to prove: (1) English and at least one other person reached an agreement to distribute heroin; (2) English voluntarily and intentionally joined the agreement; and (3) at the time he joined the agreement, English knew its essential purpose. See United States v. Bowie, 618 F.3d 802, 812 (8th Cir. 2010). In order to convict English of possession of heroin with intent to deliver the government was required to prove "either actual or constructive possession and intent to distribute." United States v. Lewis, 3 F.3d 252, 254 (8th Cir. 1993) (per curiam) (citing United States v. Brett, 872 F.2d 1365, 1369 (8th Cir. 1989)).

---

[2]The Honorable Donovan W. Frank, United States District Judge for the District of Minnesota.

At trial the United States presented evidence that from 2012 to 2014 English was one of the heads of a heroin distribution organization known as "the Crew" that operated in north Minneapolis, Minnesota. The investigation began when officers arrested a regular customer of the Crew in possession of a small amount of heroin. Officers used this individual to make controlled buys from members of the Crew, and this informant provided information that enabled undercover officers to make buys from Crew members. Officers learned that two telephone numbers were regularly used by the Crew in receiving orders from prospective heroin purchasers. After further investigation, which included interviews with Crew members, an indictment was returned and filed on September 16, 2014, charging English and seven others with conspiracy to distribute heroin. A warrant for English's arrest was issued but English was not immediately arrested.

It was determined that English traveled to Chicago every 10 to 14 days in order to obtain a new supply of heroin and that English regularly used a home in Chicago. Using a court order permitting law enforcement to track the cell phones associated with the telephone numbers previously obtained by law enforcement, officers tracked both cell phones to the Chicago home on the weekend of September 27, 2014. By tracking these cell phones, officers determined that a vehicle in which English was a passenger was returning to Minneapolis on September 30, 2014. On that date, law enforcement officers stopped the vehicle as it entered Minneapolis. English was arrested on the outstanding warrant and $5,440 in cash was found in his pockets. Searches of the vehicle eventually uncovered marijuana hidden in the ceiling above a visor and 196 grams of heroin wrapped in cellophane and stuffed in a sock concealed in the back of the driver's seat. Four cellular phones were found in the vehicle, two of which were assigned the numbers used by the Crew in receiving heroin orders.

All of English's co-defendants entered guilty pleas pursuant to plea agreements. A superceding indictment was returned adding the charge of possession

of heroin with intent to distribute against English. At trial, government witnesses, including three of English's co-defendants, testified that they were participants in the Crew's criminal operations. They stated that English was a leader of the Crew who co-ordinated the enterprise by giving instructions with respect to the Crew's heroin distribution network, making regular trips to Chicago to replenish the organization's supply of heroin, dividing the bulk quantities of heroin so obtained into smaller amounts for distribution to the ultimate consumers, setting the price for the heroin sales, and receiving money from the street sale of heroin.

On appeal English asserts that, although he was a passenger in a vehicle in which drugs were hidden, neither his fingerprints nor his DNA was found on the packaging of the heroin discovered in the vehicle; the vehicle was not licensed in his name nor did he have exclusive control over the vehicle; he was never observed selling heroin; the two cellular phones used to receive heroin orders which were found in the vehicle were not listed in his name; he was not in possession of drug paraphernalia; and he did not live a lifestyle typically associated with that of a drug trafficker. Therefore, according to English, the government's case rested solely on the testimony of co-defendants who were the beneficiaries of plea agreements providing them with sentencing concessions, and heroin addicts who testified against English in exchange for favorable charging or sentencing decisions. He argues that these witnesses lack credibility and thus their testimony can not support the jury's verdict.

In considering English's contention we are cognizant of our obligation to evaluate the evidence to ensure that there is sufficient evidence to prove all the elements of the crime charged beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 313-20 (1979). And we have done so. After close examination of the trial record, we conclude that the evidence was sufficient to support the jury's verdict.

-4-

In conducting an appellate review, "[t]his court does not weigh the evidence or the credibility of the witnesses." United States v. Wiest, 596 F.3d 906, 910 (8th Cir. 2010) (citing United States v. Honarvar, 477 F.3d 999, 1000 (8th Cir. 2007)). Further, "it is within the province of the jury to make credibility assessments and resolve conflicting testimony." United States v. Bower, 484 F.3d 1021, 1026 (8th Cir. 2007) (citation omitted). And, although English points to a lack of evidence corroborating the testimony of the government's cooperating witnesses, a jury verdict may be based solely on the testimony of cooperating witnesses. See United States v. Smith, 632 F.3d 1043, 1046 (8th Cir. 2011) ("We have repeatedly upheld jury verdicts based solely on the testimony of cooperating witnesses."); United States v. Thompson, 533 F.3d 964, 970 (8th Cir. 2008) (The "testimony of an accomplice is sufficient to sustain a conspiracy conviction unless it is incredible or insubstantial on its face." (citation and alterations omitted)); United States v. Whirlwind Soldier, 499 F.3d 862, 870 (8th Cir. 2007) ("[A] conspiracy conviction may be based on indirect or circumstantial evidence, including solely testimony from co-conspirators."). Accordingly, we find that the evidence was sufficient to support the jury's verdict.

The judgment of the district court is affirmed.

_____